OPINION OF THE COURT
Harold Baer, Jr., J.
On September 12,1983, Chase Manhattan Bank (Chase) moved to quash or, alternatively, to modify the subpoenas duces tecum served on Chase and Milbank, Tweed, Hadley & McCloy (Milbank) by defendants Levine and Roseman. On September 12 and 14, 1983, the court heard argument on the motion and ruled from the Bench on the majority of requests sought to be quashed. The remaining items are disposed of as follows.
*1060 Chase asserts that certain documents subpoenaed are protected by the attorney-client and attorney work-product privileges: Levine subpoena items 2, 4, 5 and 9 (a) and (e) and Roseman-Chase subpoena items 7 and 11 and Rose-man-Milbank subpoena items 2 and 11. The defendants claim that Chase waived the privileges by delivering the disputed documents to the District Attorney of New York County, where their use resulted in the Grand Jury indictment now about to be tried before this court. We have been unable to discover any New York case that sheds light on this issue, and thus it appears to be a matter of first impression here, although Federal courts have dealt with the issue and their reasoning is instructive.
It is admitted by Chase that the documents subpoenaed were turned over to the District Attorney of New York County (except Levine No. 2, Roseman-Chase No. 7 and Roseman-Milbank No. 2) without a reservation of right so as to be able to assert the privilege in subsequent proceedings. Turning to the documents turned over to the District Attorney, Chase argues that its interests were “sufficiently common” with the investigation of Chase’s former officers and borrowers to permit an exchange of information, without waiving the attorney-client or work-product privileges.
Several Federal courts have held that the involuntary disclosure of privileged documents to a government agency does not waive the privilege. (See, e.g., Osterneck v Barwick Inds., 82 FRD 81, 83.) Chase’s production and disclosure, however, was voluntary, that is, it did not seek to prevent the production by asserting the privilege. Moreover, documents protected by the attorney-client privilege have been voluntarily produced to a governmental agency on the condition that the privilege will be maintained in subsequent proceedings, and in those cases courts have held that, under the circumstances, the privilege was not waived. (See, e.g., Teachers Ins. & Annuity Assn. v Shamrock Broadcasting Co., 521 F Supp 638; Schnell v Schnall, 550 F Supp 650, 653.) However, unless the right to assert the attorney-client privilege in subsequent proceedings is specifically reserved at the time disclosure is made to a governmental agency, that disclosure is held to be a complete waiver of that privilege. (See Teachers Ins. & Annu *1061 ity Assn. v Shamrock Broadcasting Co., supra, at pp 644-645.) Chase, by its own admission, made no reservation of the attorney-client privilege at the time it produced these documents, and thus it has waived that privilege with respect to the documents disclosed.
Similarly, Chase’s contention that its interests and those of the District Attorney were sufficiently common to negate a waiver of the work-product privilege protecting the documents produced is without merit. Judge Lasker, considering the question in a recent case, Matter of Grand Jury Subpoena (566 F Supp 883), held that a corporation waived its work-product privilege when it delivered documents to the District Attorney in connection with a State Grand Jury investigation. The court stated that “a mere hope or expectation that the District Attorney was an ally and not an adversary does not convert the relationship into a ‘community of interest.’” (Supra, at p 885.) Chase has produced no evidence that it reasonably believed when it produced its work product for the District Attorney that the prosecutor shared — exclusively with Chase — á common goal or interest.
Finally, defendants have demonstrated that the disputed documents may contain information useful to the defense to show bias and interest of the People’s witnesses. The State’s concern in protecting attorney-client communications and attorney’s work product may not go so far as to inhibit the vital constitutional right of cross-examination and, concomitantly, the impeachment of witnesses to demonstrate bias or interest. (See Davis v Alaska, 415 US 308.)
Accordingly, the motion to quash those documents produced to the District Attorney is denied, and as to those documents not so produced, they are ordered submitted for my in camera review.
Item No. 6 (i) and (j) of the Levine subpoena and item No. 12 of the Roseman-Chase subpoena (identical to item No. 4 of the Roseman-Milbank subpoena) seek reports and related. documents submitted by Chase to the United States Comptroller of the Currency and the Federal Reserve Board. Chase argues that by Federal law these documents are confidential. However, as to the Comptroller of the Currency, Federal regulations provide these reports may *1062 be obtained by proper judicial subpoena and, therefore, must be produced. (12 CFR 7.6025.)
Chase must also produce any relevant report submitted by Chase to the Federal Reserve Board which was prepared by Chase’s agents or employees, but need not produce any report prepared by the Federal Reserve Board, its agents or employees.
Finally, the People will not be required to furnish the names of unindicted coconspirators. Any evidentiary problems that may arise as a consequence of this ruling will, where possible, be brought to the court’s attention and resolved prior to the eliciting of any such testimony by the People.